Good morning your honors and may it please the court my name is Julia Breaker and I represent the petitioner Maria Martinez Castro. I'd like to reserve three minutes of my time for rebuttal. Can I interrupt for a minute there's something of an echo I don't know if you can get closer to the microphone or something like that. Is this better? Maybe I don't know keep going. Okay the agency erred in denying Miss Martinez's gender-based particular social groups. The agency found that these particular social groups were amorphous and contained internal diversity. The law of this circuit as well as this agency's own law has long held that these are not reasons to deny a particular social group. In Mohammed v. Gonzalez, in Perdomo v. Holder, this court has consistently held that these are not reasons to deny a particular social group as well as the agency's own precedence in matter of ACOSTA and matter of CA which both specifically recognized sex as a recognizable particular social group. The agency should be overturned on this point because when the record evidence is properly assessed it compels a finding that Honduran girls and Honduran women are particular social groups. This evidence in compliance with the agency's law in matter of MEVG which says that the agency should consider laws and policies, cultural norms, country conditions, and expert evidence shows that gender is a distinguished characteristic in Honduran society. There are laws against gender discrimination, laws against femicide, social and cultural norms that set apart Honduran girls and women, as well as gender units in multiple offices in the Honduran government. So that by having that that sounds like by having let us say pro-female laws and so on you create a social group that is in some way evidence of persecution. Now that that part that sounds odd. I haven't heard that before. I thought most of the will be persecuted. So is there some precedent for get taking in in in a favorable point that there is just anti-discrimination laws? Yes your honor, I think this court's precedent and Enrique Rivas where the court found that witness protection laws were important evidence of social distinction in the particular social group analysis as I understood it is independent of whether there's persecution or isn't persecution. It's a pre-determination of the existence of this group in this society and the kinds of laws that you're talking about. I mean it seems a little odd to say that you need a law to group. But go ahead. Yes your honor, I think then it's also important to look to social and cultural norms. I would direct the court to Honduran expert Claudia Hermann-Storfer starting at page 560 where she lists the numerous ways that Honduran society sets apart Honduran women specifically in their roles in society. That's not from the persecutors perspective. That's not from the perspective of someone who is hiring them. That's from society's perspective as a whole. I think the harder question or not the harder question but the relevant question whether gender in a particular country is the kind of group that was meant to be covered by a particular social group and I gather there is some historical evidence that it was. At least you say that. But that seems to me to be the pertinent question. Yes your honor. So sex as I mentioned earlier sex is one of the characteristics mentioned in matter of Acosta the board's seminal case on particular social group. I also would like to directly quote from matter of CA the board's case that established the particularity and social visibility now called distinction arguments. This is page 959. Social groups based on innate characteristics such as sex or family membership are easily recognizable and understood by others to constitute social groups. That leads me to the question are you going to argue about the family issue in this case or not? Yes your honor. I will get to that right now. The agency erred in applying matter of LEA 2 to Ms. Martinez's case first because matter of LEA 2 is unlawful. It creates a new requirement that an asylum applicant show that they have greater societal import if they are proposing a family based particular social group and also that they show not that their family is distinct in society but rather that their family is distinct from other families. It's a heightened standard. It also contradicts again matter of CA which I just quoted from saying that family relationships are an easily recognizable social group. This court has long held and affirmed in Gomez Sanchez that the board acts arbitrarily when it disregards its own precedents and policies without giving a reasoned explanation. Here the attorney general in matter of LEA 2 did not explain why it was departing from this standing precedent recognizing families as particular social group. Even under the agency's test when we look at the evidence in this case Ms. Martinez's family based particular social groups are distinct. Expert Amelia Frank Vitale notes that family is quote the fundamental social unit in Honduras. That's at 414. In Honduras the social import of families is evident from the fact that your citizenship comes from your parents. That's at page 908. The fact that there are custody laws. Ms. Martinez herself explained how her family was viewed as separate as a unit in society. She testifies to this at 215. Her daughter Rosie in her declaration at 335 explains also that their family was seen as separate and that that family relationship was so salient that at the point that the family began being threatened by the gangs the family essentially had to disperse because that's how strong the family relationship was. They had to hide their membership in that particular social group. So Ms. Brinker your argument is that matter of LEA I guess could be we wouldn't necessarily need to give Chevron deference because it's if we reviewed it under the same test or you know that the agency did it was still entitled her to relief. Yes your honor that's correct and that the evidence in the record compels a finding that her family is distinct that her family based particular social groups. I don't understand why it's distinct from other families? That it's distinct in Honduran society and this is something that the immigration judge discussed in his decision one of the reasons that he denied it was that she could not distinguish her family from other families. I understand it so how if you accept the matter of LEA how does she prevail? She prevails because matter of LEA claims to not change the standard that the agency issued an MEVG where in order to see if a particular social group is valid you look at expert declarations, country conditions, social and cultural norms, laws and policies and so when we look at the evidence of all of those in Ms. Martinez's case it shows that families are distinct in Honduras and then Ms. Martinez her daughter. Is that saying that families generally are as opposed to her particular family? It says that families are distinct in Honduras and because Ms. Martinez was a member of a family and this family was persecuted by the gangs on account of their family membership she qualifies for asylum. So the general country conditions reports apply to the facts of Ms. Martinez's case including her individual testimony. But that still doesn't seem to me matter of LEA because it still doesn't demonstrate why her family is distinct and then which is what's wrong with the opinion it seems to me it doesn't make a lot of sense in that regard but I think you have a hard time saying that applying LEA she prevails. Applying the agency's standard which LEA states is still the test laid out in MEVG when we're looking at the record evidence Ms. Martinez's family is distinct in Honduran society. I was saying that and help me if I've got this wrong that the reason I thought LEA was not bad on is that it says most nuclear families are not inherently socially distinct but if you can show they are you're still good. Sometimes people blithely say that that means inherently not socially distinct but I don't read LEA that way it just says it says that they are not inherently socially distinct but if you can show that they are I'm from Kentucky we talk about the Hatfields and the McCoys everybody knew who the Hatfields and the McCoys were they were distinct and if you can show that then you win on the facts not because there's anything wrong with LEA that was the reason I put it that way. Yes your honor and and I agree with that and Ms. Martinez as well as her daughter and her son-in-law testified to how their family unit was seen as a distinct social unit which is what the requirement in MEVG is. I'd like to say you've done these the gender issues you've done the family issues and the relationship issues you want to talk about those. I'm sorry I did not understand the third set of social groups well one question I have is you have a bunch of different social groups you're alleging do we need to reach all of them? No your honor there are a number of particular social groups but given that Ms. Martinez faced harm from three separate persecutors and has an asylum claim based on those three separate persecutors each independently it is important to at least address the particular social groups of at least one particular. You have the gang you have the husband the third is her father but is your father even alive? No your honor but it could eligibility for humanitarian asylum and I review that on page 44 of the opening brief. I would like to just briefly address the agency's errors in nexus where the agency failed to apply the mixed motive standards and only applied a its own interpretation of the personal motives of the persecutors. It's also very important that the court reverse the agency's denial of convention against torture protection Ms. Martinez suffered decades of brutal torture in the form of physical and sexual violence a medical examiner found about 12 scars on her body from this violence she and her family repeatedly attempted to report to police and they repeatedly denied telling her things like this is normal. Did the BIA make a finding on the torture as to whether there was torture? The BIA was equivocal but I but given the severity of the violence that she suffered decades of violence by her partner a brutal gang rape by the MS-13 gang that left her with digestive problems from being anally raped she certainly meets that standard. But I'm just wondering whether technically speaking we need to rematch the BIA on that No your honor because substantial evidence supports a finding of torture. But they didn't make a finding of torture. They didn't make a finding of no torture either right? That's correct your honor but substantial evidence compels a finding that she was tortured and with that I'd like to reserve my remaining time. Thank you please Jim. Mr. Hogan. Good afternoon or good morning may it please the court for the department of justice. I guess to start with the family-based social groups first with regards to the matter of LEA the attorney general's analysis was very similar to a matter of AB in that it didn't create a categorical presumption against those social groups. It was merely saying that like any social group it has to satisfy the three-pronged requirement of your honor it's just that like any other social group it has the applicant has to show evidence satisfying all three of those requirements. And even though it appeared to say that this that being a family wasn't enough it had to be a distinct family. Well social distinction yes your honor it would have to satisfy. In other words it couldn't be and and it said that this was true because everybody has a family which it isn't a rational basis for that decision because or most people have religions and and races and ethnicities also. And that was the reason it gave for having what I read as a presumption against simply saying it's my family it has to be some kind of a special family. No you don't think that's what I'm saying? With respect no your honor I don't think that's what the attorney general's point was it was just that while family can be a same standard of evidence or the same legal requirements and that's if that's true then why doesn't she prevail she has evidence here of the role of families in Honduran society she has her own testimony as to the distinctness of her family why isn't that sufficient? Well that's the thing your honor that's where she falters unfortunately is that she hasn't shown that her family is within society when she was asked. Okay let's go back to the you don't have a presumption matter of fact starts with most nuclear families are not inherently socially distinct and therefore do not qualify as particular social groups that's not a presumption. It's not a no it's not a categorical presumption your honor it still allows that if a person can satisfy the requirements they can prevail they can show that their their group is cognizable. So by analogy the point Judge Berzon raised but everyone has a religion but I take it you would probably argue that not every religion is recognized as as socially distinct that the the northern Lutherans are not seen as distinct from the middle Lutherans and the southern Lutherans. Well that's not the attorney general's point I think the statute is ambiguous your honors and therefore the attorney general has the authority to craft this test. The statute is ambiguous your honor this court has held that in numerous cases over the past several years. Then in LEA he says an alien's family based group will not constitute a particular social group unless it has been shown to be socially distinct in the eyes of its society that that needs to be like a presumption you have to show it's not this unless you show x. So you begin from the premise that it's not x. But it's not a categorical presumption your honor the the petitioner can still show their eligibility in that group if they satisfy the social distinction. In the ordinary case a family group will not meet that standard because it will not have the kind of identity identifying characteristics I mean this reads all the way as starting from the premise that a family is not a social group and you have to overcome that premise with particular evidence. The nuclear family will not without more constitute a particular social group because most their families are not inherently socially distinct. Yes your honor but just like in matter of AB it's it's not a categorical presumption and I it's not a categorical it's not a per se rule but it's a presumption. Well is it a presumption or is it just pointing out that if you come into court and just say I've got a family I would automatically win and the attorney general says no that's not right you have to meet the regular standard. Now maybe maybe he didn't need to say that but if that's all he of LEA on those on those terms. But either way Mr. Hogan you say that she she doesn't get relief under the family group but Ms. Martinez credibly testified I think that you agree with that right that she was found credible. Yes your honor. Okay that her community recognized her family and knew about their problems with the game. She further testified that her children and family members had to avoid being seen with her for fear of being associated with Martinez her son-in-law Wilma and her daughter Edith. I think she makes a couple other references. Why why doesn't that make her family socially distinct that that is the family that has to avoid being seen with. Her testimony was when she was asked several times how is your family distinct from others within society and she said that her family is similar you know we have we're impoverished and she was offered several opportunities but she never really set forth why her family could be perceived differently from other people within the society and a lot of times when she was talking about her family-based claims it was how her persecutors of people who sought to perspectives or views can't establish social distinction it's that an average Honduran citizen would be able to look at them and understand they were a family unit and she never really went into why that was with and it is it's an unfortunate case it's a difficult case because there are so many bad actors here that she's trying to convey what happened and why. But in the end matter of LEA seems to require that if that's not sufficient to that the applicant society places great significance on the concept of the family instead it has to be that the specific nuclear family would be recognizable by society at large. Is that the rule? So even if if you have a society in which what family you belong to is the critical social factor that's not good enough it has to be your family is distinct in some way is that what LEA holds? Yes I would think that Judge Boggs' earlier description was probably the most articulate way of putting it better than I did today but yes that it would be that you would have to satisfy all three of the requirements for a social group. But in a specific way you just keep walking away from what LEA specifically said the immediate family has to carry greater social import than just the concept of a family. But I think what the attorney general was trying to do in that case was to reiterate. What he was trying to do is what he said not something else and that's what he said right in other words you have to show that your particular family is distinct not just that society is organized around the concept of families and what family you're in really matters. Yes your honor that's a fair point but that that's what the attorney general was driving that is that you just can't show up in immigration court and say you're a member of a family and therefore you you've met your burden to show it's a social group you still have to show the evidence of those three requirements. As to your particular family being different than other families? Yes your honor that it's I mean immutability is something that can be easily established but when it comes to particularity and social distinction and I social distinction is probably going to be the the factor where the social distinction means I mean all of us tend to identify and other people tend to identify us as being members of our family and on the record here that's clearly seems pretty clearly to be what happened to her but that's not good enough it has to be that her family you know if you ask somebody on the street whether the Martinez family was a special family they'd say oh yes it's not just a special family. Well not a special family just that there's something about them that that the Honduran society general can perceive them to be a family. Well everybody perceives them to be a family I mean everybody knows I mean who's in my family I mean I don't understand I don't understand what you're saying I really don't understand it there's there there is some attempt here to say that that you need to be among families a special family. Not special your honor but just to show that in some way society perceives that as a family unit just as in other cases like for for example uh Henriquez Rivas where it was informants they had to show that society somehow perceived them. Informants is different that's amorphous nobody knows what you're talking about everybody knows we're talking about when you're talking about a family. Well with respect your honor I mean that familyism also can be very amorphous it's different in each situation it's different in each culture. Okay um if I can on gender um weren't the BIA's reasons for rejecting the proposed uh group Honduran women the same reasons that we uh rejected in Perdomo? It seems to me that under Perdomo the BIA can't reject those groups simply because it is too large or internally diverse. Can you talk about that a little bit? Well in Perdomo the issue was particularity and your honor is correct that when it comes to defining the outer limits of the group it you can't just say it's too large or it's over broad but in this case as I believe the panel was talking about earlier um it was more it was social distinction and that there are laws um and unfortunately they're passed because of a lot of mistreatment but that doesn't show how each and every woman is perceived within Honduran society it just showed it shows how a lot of bad actors unfortunately perceive certain subsets of women and I think that's that's what the agency was trying to drive at uh but I do take your point in that the agency was not very clear in this case in in making clear that they were not talking about particularity and Perdomo as you're saying. And if I could ask you about uh Kat is it your view that the BIA made a determination uh if so can you point to where they did? It is unclear your honor. If it is unclear what what what do we do? I would say under the circumstances of this case the government would suggest actually putting it in mediation with the parties to further discuss the Kat finding um but what I I can't I don't want to answer for the board because I can't do that as as this court's precedent says I can't go beyond what the agency says um the only thing I can point out in the record though is it's unclear who would accost her if she returns given she's lost contact with her husband her father passed away and she returned to uh Honduras at least once after she left and no one in the gang accosted her but again as your honor points out she returned after the gang accosted her in 2016? Yes your honor she went she left with her grandchildren and they entered Mexico but then they had to return to Honduras to get a birth certificates for the grandchildren. For a very brief time as I understand. I believe it was for several weeks your honor. Yeah okay. So but with regard to the country conditions and the um or the the acquiescence the IJ cited an article which seems to say exactly the opposite of what he said it said i.e. it seems just very strongly support the notion that there is um that the the um police in Honduras are not going to help out somebody with about gang issues? That is a fair point your honor and again it seems that mediation would be a good a good avenue to begin discussing that issue with opposing counsel about what to do moving forward in this case. So are you suggesting we send this case to mediation? Yes your honor. Did you do that before or just this minute? Well we did approach counsel before about counsel but not it's not about mediation your honor about maybe holding it in advance and looking for an alternative resolution. I see okay um the one thing neither of you have addressed are the relationship um proposed social groups and there have been a couple of opinions in the DC circuit and the sixth circuit um about the relationship uh similar groups um to the one that was defined here and how matter-of-factly affects that what should we do with all that? I think the best avenue would be able to let the parties file 28 days with regards to those Thank you your honor. I'd like to first ask first what your view of mediation is. Um I think that if mediation can be done if Ms. Martinez can be paroled in for the mediation process then yes that is an option as I explained to Mr. Hogan when he reached out about a motion to place the case in abeyance. Ms. Martinez is in a dangerous situation and hiding in Honduras and is not in a position to be delaying her proceedings any further. Um briefly looking at the cat case I would like to clarify she did not lose contact with her abusive ex-partner he continued to stalk her virtually the entire time that she was in Honduras um as she testified to on 2-15 it was a less than 25 days that she returned to Honduras and as this court found in Akwesasne hiding in order to avoid persecution is not considered a safe alternative for individuals. She has been deported she was removed because we didn't issue a stay why was she removed? She did not seek a stay she had been detained for over a year and her physical and mental health was deteriorating um with respect I mean if we sent the case for mediation obviously the first conversation mediation could be the parole so you could at least start with a conversation about what we usually do is we send we ask you to have an initial conversation with the mediators about whether to have the mediation uh and at that that discussion you could discuss the parole. I understand your honor um earlier this week Mr. Hogan told me that ICE had declined to parole so I am doubtful that I can't speak to whether that's how or how whether how that will change um but she's not in a position to further. May I ask you what I asked um Mr. Hogan at the end which is what about the relationship with social groups i.e. um Honduran women viewed as property or unable to leave the relationship you didn't discuss those? Yes your honor um the court's decision in Diaz-Reynoso explaining that groups qualified by by unable to leave the relationship are not circular and are permissible because they are not entirely defined by the harm is an important case to apply to Ms. Martinez's case. But don't we also have the sixth circuit opinion in grace I mean the D.C. circuit opinion in grace regarding the the general statements in AB about domestic violence and um the sixth circuit opinion um in which um Judge Fox was on the panel. I believe it's Juan Antonio. Right um are those not pertinent here? Um Juan Antonio was addressed in um I believe in the opening brief um and the D.C. circuit case is about asylum seekers and expedited removal proceedings um so it is somewhat procedurally different from Ms. Martinez's case um those courts the decision. Yes but but the merits seemed to me that they were saying that these are cognizable groups or that insofar as matter of AB suggested they're not because um the domestic violence rubric is not sufficient that that it's an invalid decision. Yes your honor that is a suggestion in those cases and the court should take that into consideration. I think those are addressed in both the amicus brief as well as the opening brief um and seeing that I am far over my time thank you very much all right thank you thank you both for your arguments in this complicated and important case um and we will see about the mediation um case of Martinez versus Castro about Martinez Castro versus Garland is submitted we'll go to Mott versus Trinity Financial Services.
judges: Boggs, Berzon, Murguia